IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SUZANNA F. GREER; THE ESTATE OF LISA EIDSON GREER, | ) ) ) | |
| PLAINTIFFS, | ) ) ) | |
| v. | ) ) | 2:19-cv-00060-GMB |
| THE CINCINNATI INSURANCE COMPANY; GUIDEONE MUTUAL INSURANCE COMPANY, et al., | ) ) ) ) ) | |
| DEFENDANTS. | ) | |

### PLAINTIFFS' ANSWER TO DEFENDANT CINCINNATI INSURANCE COMPANY'S FIRST AMENDED COUNTERCLAIM FOR DECLARATORY RELIEF (Doc. #41)

**COMES NOW,** Plaintiffs Suzanna F. Greer and the Estate of Lisa Eidson Greer (collectively referred to as "the Greer Family Plaintiffs"), who answer the First Amended Counterclaim For Declaratory Relief (Doc. #41) made by Defendant Cincinnati Insurance Company ("CIC") as follows:

### CINCINNATI INSURANCE COMPANY'S FIRST AMENDED COUNTERCLAIM FOR DECLARATORY RELIEF

1. No response appears to be required from the Plaintiffs for this paragraph, but Plaintiffs generally deny and demand strict proof thereof.

2. Admitted.

3. Admitted in part, denied in part. At the time of the shooting, Terry Greer was the Senior Pastor of Gardendale-Mt. Vernon United Methodist Church ("GMV").

4. Admitted.

5. Admitted in part, denied in part. Terry Greer was not a named insured under the policy of insurance written by CIC, but he was an insured by the definitions contained therein.

6. Admitted.

7. Admitted in part, denied in part. Terry Greer was not a named insured under the policy of insurance written by CIC, but he was an insured by the definitions contained therein.

## CIC'S COMMERCIAL GENERAL LIABILITY POLICY

8. Admitted that Defendant CIC quoted certain provisions from their policies of insurance in this paragraph (i.e., Doc. #41, pages 22 – 26 of 67), and that other provisions of the policies may also pertain to the facts of this case. Plaintiffs otherwise deny the allegations of this paragraph. Furthermore, there are several sections to the policy (e.g., a Commercial General Liability section, an umbrella coverage section, etc.), each of which has its own

unique set of coverages, separate policy limits, and exclusions.[1]  Also, there may be other policy provisions not cited by Defendant CIC, which can be relied upon to provide additional coverage.

9. Denied.  First, Defendant CIC's policy language does not overcome the Greer Plaintiffs' rights under Alabama law to make their Direct Action Statute claims.  Second with regards to both the Direct Action Statute claims and to the assignment of contact claim, the attorneys for Terry Greer repeatedly requested coverage from Defendant CIC, which Defendant CIC repeatedly denied without the issuance of a reservation of rights letter.  Consequently, Defendant CIC waived, disclaimed, or otherwise relinquished any right it may arguably have had to require written consent.

---

[1] The language in Defendant CIC's Counterclaim seems to co-mingle the different definitions, coverages, and exclusions from each unique section of the policy.  The policy includes, but is not limited to, a Commercial General Liability section, and a Commercial Umbrella Liability Coverage section.  Out of an abundance of caution, the Plaintiff denies that the Defendant is allowed to "mix and match" the definitions, coverages, and exclusions of each unique section of the policy in a manner which cumulatively causes a reduction or restriction of the coverage afforded to the original insured, i.e., Terry Greer for each unique section of the policy.

Each unique part of the policy contains identifying numbers at the lower left hand part of the page.  For example, the Commercial General Liability part of the policy is identified as Form GA 101 12 04, and the Commercial Umbrella Liability Coverage part of the policy is identified as Form US 101 UM 12 04.  Each section contains its own definitions, coverages and policy limits, and exclusions that are unique to that section.  The Plaintiffs contend that the Defendant cannot share the definitions and exclusions back and forth between sections.  Consequently, the Plaintiffs contend that their claims may be covered by some sections of the policy, but not by others.

10. Denied. As an "employee" under the Commercial General Liability ("CGL") policy (Section II – Who Is An Insured, ¶2a (Doc. #20 – 1, Pages 84 – 85 of 90), and more specifically as a "member of the clergy" under the Religious Institutions Commercial General Liability Endorsement (Doc. #20 – 2, Page 7 of 85), Terry Greer was an insured minister who committed negligence which made him liable to the Greer Family Plaintiffs.[2] Defendant CIC incorrectly denied repeated coverage requests made by Terry Greer's counsel during the underlying civil litigation in State Court. As a result, Defendant CIC had a duty to defend and/or indemnify Terry Greer related to the claims from the underlying lawsuit.

11. Denied. As a matter of law, Terry Greer's negligent acts or omissions leading up to, related to, and including shooting the Greer Family Plaintiffs were neither intentional nor criminal because he was mentally incompetent at the time of the shootings.[3] Defendant CIC had a duty to defend and indemnify Terry Greer for the claims made in the underlying lawsuit.

---

[2] The CGL part of Defendant CIC's policy provides coverage for bodily injury and death, and has policy limits of $1,000,000 per occurrence, and $2,000,000 for the annual aggregate. GA 501 10 01 (Doc. #20-1, Page 72 of 90). The relevant portions of Defendant CIC's CGL policy (i.e., GA 101 12 04) are found at Doc. # 20 – 1, Pages 74 – 90 of 90, and continuing through Doc. #20 – 2, Pages 1 – 4 of 85.

[3] Terry Greer was acquitted of murder and other related charges by reason of mental disease or defect in his criminal case in State Court. Order in State of Alabama v. Greer, Circuit Court of Jefferson County, Alabama, CC 2013-002134.00 and CC 2013-002135.00 (May 28, 2014). A copy of this Order is attached hereto as Exhibit "A".

12. Denied. Defendant CIC appears to misinterpret its policy with regards to the workers compensation exclusion contained in their Commercial General Liability Coverage Form, paragraph 2e (GA 101 12 04, at Page 2 of 23) (Doc. #20-1, page 75 of 90).[4] This workers compensation exclusion paragraph only benefits the employer of Terry Greer, i.e., either Gardendale-Mt. Vernon United Methodist Church ("GMV") or the North Alabama Conference of the United Methodist Church ("the Conference"), or both, neither of whom are sued in the instant case. This exclusion does not exclude coverage for Terry Greer's negligence with regards to the Greer Family Plaintiffs.

13. Denied. The Commercial General Liability Coverage Form of the policy (Form GA 101 12 04), covered Terry Greer as an insured. The policy also covered his negligence while performing duties for or the business of the named insured, Gardendale-Mt. Vernon United Methodist Church ("GMV") leading up to and related to the shootings. Further denied, because Plaintiffs contend that sections of the policy also covered Terry Greer for negligence not necessarily related to the performance of his duties.

---

[4] In its Counterclaims, Defendant CIC cites provisions of its insurance policies by referring only to its own Bates numbers instead of using the Court's docket numbers. It does not appear that Defendant CIC filed copies of its insurance policies with Bates numbers on them. To the best of Plaintiffs' ability to correlate Plaintiffs' responses in this pleading to Defendant CIC's allegations in their First Amended Counterclaim (Doc. #41), the Greer Family Plaintiffs cite to the Court's docket numbers.

5

14. Denied. Terry Greer's negligent acts satisfy the definition of an "occurrence" per the policy language, i.e., Terry Greer's shooting of the Greer Family Plaintiffs was not intentional or criminal, but was an "accident" per the policy language as a matter of law. Commercial General Liability Coverage Form, Section IV, at Page 19 of 23, ¶16 (Doc. #20-2, page 2 of 85).

15. Denied. The underlying civil lawsuit in State Court (<u>Greer v. Greer</u>, CV-2015-00010 in the Circuit Court of Jefferson County, Alabama), was a "suit" pursuant to the policy language, i.e., the underlying litigation was a "civil proceeding in which money damages [occurred] because of 'bodily injury'…..to which this insurance applies…." Commercial General Liability Coverage Form, Section IV, at Page 20 of 23, ¶21 (Doc. #20-2, page 3 of 85).

16. Denied.

17 – 24. The Greer Family Plaintiffs make no claim for insurance coverage under the "Religious Institutions Wrongful Acts Coverage From" part of Defendant CIC's insurance policy, which has its own separate $1,000,000 limit of coverage. "Religious Institutions Wrongful Acts Coverage Form, PA 112 08 07, Doc. #20-2, at Page 69 – 79 of 85.

25. Denied. Defendant CIC accurately quoted the policy language from the Commercial Umbrella Liability Coverage Part ("CUL") of the Commercial General Policy ("CGL"). Pursuant to the facts of the instant case and as a matter of law, however, Terry Greer did not commit any "abuse or molestation" or other intentional or criminal acts which are excluded by the Commercial General Liability part of the policy.[5]

26. Denied.

27. Denied. Pursuant to the facts of the instant case, and as a matter of law, Terry Greer did not commit any "abuse or molestation" or other intentional or criminal acts which are excluded by the Commercial General Liability part of the policy.

28. Denied. The "Employment Related Practices" exclusion, i.e., CGL Policy Part US 101 UM 12 04, Section I, ¶B12 (Doc. #20-3, Page 45 of 45), does not operate to exclude Terry Greer's negligence related to the shootings. As Senior Pastor of GMV, Terry Greer was an "insured" pursuant to the Commercial Umbrella Liability Coverage Form section of the policy (Form

---

[5] The CUL part of Defendant CIC's CGL policy provides umbrella coverage, and has separate policy limits of $2,000,000. USC504 12 04, Doc. #20 -3, Page 38 of 45. The relevant portions of the CUL part of the CGL policy are contained at Doc. #20-3, Pages 38 – 45 of 45, continuing through Doc. #20-4, Pages 1 – 15 of 118.

US 101 UM 12 04) pursuant to "Section II - Who is an insured" (pages 10 – 11 of 22) (Doc. #20-4, pages 6 – 7).[6]

29. Admitted that Defendant CIC accurately cited its own policy language, but denied that Terry Greer's negligent acts up to, related to, and including the shootings are excluded from coverage as a matter of law.

30. Denied. The Greer Family Plaintiffs will demonstrate that Terry Greer's negligence occurred in the line and scope of his employment, but there may be other negligence by Terry Greer that is also covered by the Defendant CIC's insurance policies.

31. Denied.

## CIC'S D&O POLICY

32 – 72. The Greer Family Plaintiffs make no claims against Defendant CIC's D&O Policy.

## COUNT I – DECLARATORY JUDGMENT CGL POLICY

73. No response appears to be required from the Plaintiffs for this paragraph, but Plaintiffs generally deny and demand strict proof thereof.

---

[6] While claims against Terry Greer's employers, Gardendale-Mt. Vernon United Methodist Church and/or the Conference may be excluded under this section of the policy, Terry Greer's independent negligent acts are not excluded.

8

74. Denied.

75. Denied in all aspects, including:

    A.  Denied.

    B.  Denied.

    C.  Denied.

    D.  Denied.

    E.  Denied.

    F.  Denied.

    G.  Denied.

    H.  Denied.

    I.  Denied.

    J.  Denied.

## **COUNT II – DECLARATORY JUDGMENT D&O POLICY**

76 – 78. The Greer Family Plaintiffs make no claims against Defendant CIC's D&O policy.

Plaintiff further denies the prayer for relief contained in the "Wherefore" paragraph in the Defendant's Counterclaims (i.e., Doc. #41, Page 65 of 67), and requests the Court to (1) Declare that coverage for Terry Greer existed under the

applicable CIC policies of insurance, (2) Declare that Defendant CIC has a duty to indemnify Terry Greer for all damages, judgments or settlements per the Complaint in the instant action, (3) Grant any other relief to the Plaintiffs that the Court deems appropriate, and (4) Enter a judgment in favor of the Plaintiffs and against Defendants, with interest, with costs taxed to Defendants.

        Respectfully submitted,

        s/James S. Roberts, Jr.
        James S. Roberts, Jr.  (ASB 8991-R81J)
        Attorney for Plaintiffs

OF COUNSEL:

The Jim Roberts Law Firm, LLC
1123 Main Street
PO Box 639
Gardendale, Alabama  35071
205-285-8290
jimroberts@northjeffersonlawyers.com

        s/Leslie Palmer
        Leslie Palmer  (ASB-0436-L40P)
        Attorney for Plaintiffs

OF COUNSEL:

Palmer Law, LLC
104 23rd Street South, Suite 100
Birmingham, Alabama  35233

Tel: 205-285-3050
Fax: 205-386-4383
leslie@palmerlegalservices.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading has been served by the electronic service provide by the PACER system to all counsel of record on this the 6th day of March, 2020:

Julie D. Pearce, Esq.
Gaines Gault Hendrix, PC
3500 Blue Lake Drive, Suite 425
Birmingham, Alabama 35243

Tom Burgess, Esq.
J. Kerry Burgess, Esq.
Burgess Roberts LLC
2017 Morris Avenue, Suite 100
Birmingham, Alabama 35203

Bryan Scott Tyra, Esq.
The Cincinnati Insurance Company
2001 Park Place North, Suite 200
Birmingham, Alabama 35203

Nancy K. Tordai, Esq.
Peters & Nye LLP
14 Executive Court, Suite 2
South Barrington, Illinois 60010

                                                s/James S. Roberts, Jr.
                                                Of Counsel

# Exhibit "A"

ELECTRONICALLY FILED
5/28/2014 3:32 PM
01-CC-2013-002134.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK



# IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
# BIRMINGHAM DIVISION

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| V. | ) Case Nos.: CC-2013-002134.00 |
| | )               CC-2013-002135.00 |
| | ) |
| GREER TERRY LEE | ) |
| Defendant. | ) |

## ORDER

    This matter coming on for trial this the 28th day of May, 2014, the State of Alabama and the Defendant and his Attorneys' having waived a jury trial and the Court agrees to try this case without a jury. The State and the Defendant offered a joint stipulation of facts in this case which were undisputed. The State then offered the Testimony of Dr. Glen King who is on contract with the Department of Mental Health to perform mental exams which are Court Ordered. Dr. King testified that in his opinion the defendant was suffering from a severe mental defect or mental illness which prevented him from being able to appreciate the nature and quality or wrongfulness of his acts. The State of Alabama having no evidence to suggest the defendant was not suffering from a mental illness or defect the Court finds the defendant not guilty by reason of mental disease or defect.

    The Court proceeded to conduct a hearing pursuant to Rule 25.2 of the A.R.C.P. The State called Dr. Glen King who testified that in his opinion due to the severe mental illness or defect the defendant was suffering from that he posed a real and present threat of substantial harm to

himself or others and the Court finds probable cause exists that the defendant is mentally ill and as a consequence of such mental illness he poses a real and present threat of substantial harm to himself or to others. The Court orders that the defendant be committed to the custody of the Department of Mental Health.

**DONE this 28th day of May, 2014.**

/s/ **TOMMY NAIL**
**CIRCUIT JUDGE**